Charles M. Tebbutt (OSB #96579)
Marc D. Fink (ISB #5367; OSB #99261)
Western Environmental Law Center
1216 Lincoln Street
Eugene, OR 97401
Tel: (541) 485-2471
Fax: (541) 485-2457

Counsel for Plaintiff

Laird J. Lucas
P.O. Box 1612
Boise, ID 83701
Tel: (208) 342-7024

Local Counsel for Plaintiff

FEE PAID
RCPT #6910

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

IDAHO RURAL COUNCIL (IRC), an Idaho nonprofit corporation,

    Plaintiff,

v.

JACOB BOSMA, Owner and Operator of Grand View Dairies; HENRY BOSMA, Owner and Operator of Grand View Dairies; GRANDVIEW DAIRIES, a/k/a Bosma Dairies, a/k/a Bliss Acres; and, BOSMA ENTERPRISES, INC.,

    Defendants.

Civil No. CIV 99-0581-S-BLW

COMPLAINT

## INTRODUCTION

1.    This is a civil action brought under the citizen suit provision (33 U.S.C. §1365) of the Federal Water Pollution Control Act (commonly known as the Clean Water Act and hereinafter referred to as the CWA), 33 U.S.C. §§1251 et seq. Defendants have discharged pollutants to the waters of the United States without a permit, in violation of §301(a) of the CWA, 33 U.S.C. §1311(a). In addition, defendants have violated and/or are likely to violate their General Dairy NPDES Permit No. IDG-010077, and the CWA, by discharging pollutants

Page 1 -- COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

including animal manure wastes into the waters of the United States from a concentrated animal feeding operation.

2. Plaintiff seeks a declaratory judgment, injunctive relief, remedial relief, the imposition of civil penalties, and the award of costs, including attorney and expert witness fees.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over the claims specified in this Complaint pursuant to 33 U.S.C. §1365(a) and 28 U.S.C. §1331. The relief requested is authorized pursuant to 33 U.S.C. §§1319 and 1365(a), and 28 U.S.C. §§ 2201 and 2202.

4. In compliance with 33 U.S.C. §1365(b)(1)(A), on October 7, 1999, plaintiff gave notice of the violations specified in this complaint and of its intent to file suit to the defendants, to the Administrator of the United States Environmental Protection Agency (EPA), to the Regional Administrator of the EPA, and to the State of Idaho. A copy of the notice letter is attached hereto as Exhibit A.

5. Sixty days have passed since the notice was served, and the violations complained of in the notice letters are continuing at this time, or are reasonably likely to continue. Defendants remain in violation of the CWA. Neither the EPA nor the Idaho Division of Environmental Quality (DEQ) has commenced or is diligently prosecuting a civil or criminal action to redress the violations. Any enforcement related activities undertaken by the State of Idaho do not constitute diligent prosecution under 33 U.S.C. §1319(g).

6. Venue is appropriate pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. §1365(c)(1), because the sources of all violations complained of have occurred in the District.

## PLAINTIFF

7. Plaintiff, IDAHO RURAL COUNCIL (IRC), is an Idaho not-for-profit corporation, P.O. Box 236, Boise, Idaho 83701.

8. IRC's members reside, among other places, in Gooding County, next to and in the general vicinity of defendants' dairy. The environmental, health, aesthetic, and recreational interests of IRC's members have been, are being, and will be adversely affected by defendants'

illegal discharges into waters of the United States. Members of IRC use and enjoy the waters and lands associated with the runoff from defendants' dairy, including waters in the immediate vicinity of, and downstream from, defendants' discharges into waters of the United States. The waters from drains, ditches, and tributaries into which defendants discharge flow to, among other places, Clover Creek and the Snake River. Plaintiff's members specifically use, recreate in and enjoy these areas in the following ways:

    a. IRC's members live within the watershed impacted by discharges from defendants' dairy;

    b. IRC's members recreate, or would recreate, by fishing, rafting, hiking, plant gathering, walking and boating in and around the waters impacted by discharges from defendants' dairy;

    c. IRC's members observe and enjoy wildlife in the watershed around defendants' dairy;

    d. IRC's members have an aesthetic and health interest in keeping the waters in the vicinity of defendants' dairy free of animal manure and other discharged pollutants.

9. IRC's members include the neighboring Butler family, on the Spring Cove Ranch. Defendants' dairy is located directly above the aquifer which feeds the Butler's spring, the family's source of drinking water for eighty years.

10. IRC, with approximately 500 members across the state of Idaho, is committed to preserving the economic well-being of Idaho's family farms and rural communities; to building a more sustainable society which will guarantee positive economic and social choices for present and future generations; and to achieving good stewardship for humanity, land, air, and water. Plaintiff IRC has standing in this suit to protect its own interests and those of its individual members in a representative capacity. IRC's organizational purposes are adversely affected by defendants' discharges, which degrade waters and adjacent lands and impair the habitability, the recreational value, and aesthetic benefits of the local communities.

11. Defendants' discharges alleged herein have adversely affected and continue to adversely affect IRC's members' above-described use and enjoyment of the waters affected by defendants' discharges.

12. Enforcement of the CWA and will help restore and preserve water quality, thereby promoting the objectives of IRC and the use and enjoyment of the area by its members.

## DEFENDANTS

13. Defendant JACOB BOSMA is an owner and operator of Grand View Dairies, and resides at 318 Spring Cove Road, Bliss, Idaho 83324.

14. Defendant HENRY BOSMA is an owner and operator of Grand View Dairies, and the President of Bosma Enterprises, Inc. Henry Bosma resides at 4300 Beam Road, Zillah, Washington 98953-9050.

15. Defendant GRAND VIEW DAIRIES, a/k/a Bosma Dairies, a/k/a, Bliss Acres is an Idaho proprietorship that is a Concentrated Animal Feeding Operation (CAFO) located at 318 Spring Cove Road, Bliss, Idaho 83324.

16. Defendant BOSMA ENTERPRISES, INC. is a for-profit corporation organized under the laws of Washington.

## FACTS

17. CAFOs are considered point sources under the CWA. 33 U.S.C. §1362(14). The Grand View Dairy is a CAFO as defined by the CWA, 40 C.F.R. §122.23.

18. Section 301 of the CWA, 33 U.S.C. §1311(a) prohibits the discharge of any pollutant from a point source into waters of the United States unless such discharge is permitted in a National Pollution Discharge Elimination System (NPDES) permit.

19. Even with a NPDES permit, the general NPDES permit for CAFOs, issued by EPA, prohibits discharge of any animal manure wastes except "when precipitation events cause an overflow of process wastewater from a control facility properly designed, constructed, maintained, and operated to contain . . . [a]ll the contaminated runoff from a 25-year 24-hour rainfall event."

20. From the time that defendants began operating the Grand View Dairies until on or about November 8, 1999, defendants did not have a NPDES permit.

21. In 1995, defendants began construction of dairy facilities, and began bringing cattle onto the Grand View Dairies, without prior approval from the Idaho Division of Environmental Quality (DEQ). It is a violation of I.C. 39-118 to construct or operate a dairy facility waste management system without prior approval from DEQ.

22. By April 7, 1995, defendants had about 80 head of cattle on the dairy without formal approval from DEQ.

23. By April 20, 1995, defendants had about 300 cows on the dairy without an approved waste management system.

24. In 1995, defendants began discharging wastewater and waste into lagoons not approved by DEQ.

25. Defendants have continued to regularly experience operational and maintenance problems at the Grand View Dairies site, including but not limited to the following:

    a. On or about December 27, 1996, the adjoining landowners were forced to divert manure water running off defendants' dairies toward their property and spring;

    b. On or about December 27, 1996, defendants diverted runoff into the "old pond" area, making the area a sizeable pond of wastewater;

    c. On or about December 30, 1996, liquid waste was pooled in the "old pond" area;

    d. On or about January 16, 1997, defendants were instructed by the Idaho Department of Agriculture to control all runoff from cow yards;

    e. On or about May 27, 1997, defendants were instructed by the Idaho Department of Agriculture to provide berming or other means of containment of wastewater along the west end of cow yards to prevent

|   |    |   |
|---|----|---|
| 1 |    | runoff, and instructed to provide berming around west side of the manure |
| 2 |    | separator area; |
| 3 | f. | On or about July 2, 1997, defendants were instructed by the Idaho |
| 4 |    | Department of Agriculture to provide berming around cow yards and |
| 5 |    | separator area, and to eliminate pipe in overflow storage area; |
| 6 | g. | On or before April 22, 1998, dead animals were buried in the "old pond" |
| 7 |    | area, a low spot just east of the neighboring Butler spring; |
| 8 | h. | On or about February 1, 1999, manure spillage and storage was observed |
| 9 |    | around separator; |
| 10 | I. | On or about February 10, 1999, a dead animal was observed in the "old |
| 11 |    | pond" area; |
| 12 | j. | On or about March 18, 1999, the Idaho Department of Agriculture |
| 13 |    | observed that defendants' barn water usage appeared to be operating |
| 14 |    | beyond its lagoon design capacity; |
| 15 | k. | On or about June 24, 1999, the Idaho Department of Agriculture observed |
| 16 |    | that defendants were building new cow yards and a new lagoon without |
| 17 |    | approval, and wastewater was being improperly applied west of cow yard. |
| 18 |    | The Department's inspector observed, "pooled water at west property |
| 19 |    | line," "waste water coming out of end of sprinkler hand line west of |
| 20 |    | cowyards," and "waste water overflowing pump station for separator to |
| 21 |    | overflow pit to be land applied west of cowyards;" |
| 22 | l. | On or about August 10, 1999, manure was improperly being piled in the |
| 23 |    | west 200 feet of corrals and in the area between the corrals and the liquid |
| 24 |    | containment dike; |
| 25 | m. | On or about August 10, 1999, liquid waste was improperly being stored |
| 26 |    | east of the containment dike, and waste was being discharged into a pool |
| 27 |    | east of the containment dike; |

Page  6 -- COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

     n.    On or about August 31, 1999, dairy waste water was running off of defendants separator and into a pool of liquid referred to by defendants as the "irrigation pond;"

     o.    On or before September 18, 1999, and for months or years previously, defendants dumped and piled dead cows, dairy waste, manure, and other materials near the neighboring Walker spring;

     p.    On or about September 23, 1999, the Idaho Department of Agriculture requested defendants to fence animals away from direct access to canal area north of the dry cow corral, remove stockpiles of old bedding and feed from northwest dry cow pasture to prevent possible discharges to Walker property and noted that large piles were stockpiled in a significantly sloped area. The Department also requested that manure from the separator that was stockpiled in a significantly sloped area above the Butler spring be appropriately bermed. The Department also requested defendants to provide approved waste storage for hospital barn and improve berming on north end of dry cow corral to prevent runoff into canal. The inspection also noted that soiled bedding, construction scraps (iron, concrete, wood), miscellaneous milk barn trash (mastitis tubes, paper towels, milking gloves) and dead animals had been dumped in ravine at the head of the Walker Spring;

     q.    In October, 1999, waste from defendants dairy operation continued to be found in the Walker spring; and

     r.    Defendants have placed, and continue to place waste and manure in areas which are reasonably likely to cause discharges to the Walker and Butler springs and the irrigation system which traverses defendants' property.

26.    On October 7, 1999, plaintiffs provided defendants 60-day notice of intent to sue under the citizen suit provision of the CWA.

27. On or about October 17, 1999, defendants took delivery of additional cows. On information and belief, defendants were milking 1550 cows.

28. On or about October 18, 1999, after plaintiff filed its notice of intent to sue, defendants applied to EPA for coverage under the NPDES General Permit for CAFOs.

29. On or about November 8, 1999, EPA issued to defendant NPDES General Permit IDG-010077 regulating defendants' Grand View Dairy.

30. Defendants' general permit requires, among other things, that "[t]here shall be no discharge of process wastewater to waters of the United States, "except when precipitation events cause an overflow of process wastewater from a control facility properly designed, constructed, maintained, and operated to contain . . . [a]ll the contaminated runoff from a 25-year 24-hour rainfall event," plus additional runoff.

31. Upon information and belief, defendants Jacob and Henry Bosma, Grand View Dairy, and Bosma Enterprises, Inc. have repeatedly discharged liquid manure, biological material, manure contaminated stormwater, pharmaceutical wastes, and other pollutants from a point source or point sources (the Grand View Dairies) into springs, creeks, ponds, drains, ditches, and irrigation ditches that discharge directly or by connecting with other waterways into Clover Creek and the Snake River.

32. These springs, creeks, ponds, drains, ditches, irrigation ditches, Clover Creek, and the Snake River are "waters of the United States" as defined in the CWA. 40 C.F.R. §122.2.

33. The "old pond" area on defendants property is hydrologically connected to the Butler spring.

34. Upon information and belief, defendants, on numerous occasions since October 7, 1994, have discharged manure waste, biological material, manure wastewater, pharmaceutical wastes, and other pollutants into irrigation drainage ditches, drains, and canals, and from there into Clover Creek and the Snake River in, including but not limited to, the following ways:

    a. seepage of manure wastewater to groundwater hydrologically connected to surface water;

  b. discharge of manure water from drainpipes;

  c. overflow of manure wastewater from ponds, lagoons, and/or conduits;

  d. discharge and runoff of manure wastewater to area near and above the Spring Cove Ranch spring;

  e. overapplication of manure waste in excess of agronomic application rates;

  f. dumping dead animals, fetuses, debris, and dairy waste in and/or near neighbors' springs;

  g. discharge of manure contaminated water from fields; and

  h. runoff of polluted stormwater from manure contaminated areas.

35. The pollutants in these discharges include, but are not limited to, liquid and solid animal wastes, biological material, and pharmaceutical wastes. Such animal wastes contain, among other pollutants, fecal coliform and E. coli bacteria, salmonella, cryptosporidium parvum, phosphorus, nitrogen, ammonia, nitrates, and suspended solids, and they alter water quality indicator parameters such as biochemical oxygen demand, dissolved oxygen, and pH.

36. Upon information and belief, plaintiff alleges that defendants' discharges herein were not due to or a direct result of a 25-year, 24-hour rainfall event.

37. Upon information and belief, plaintiff alleges that defendants dairies are not properly designed to contain all the contaminated runoff from a 25-year 24-hour rainfall event.

38. Defendants continue to discharge pollutants, or are reasonably likely to discharge pollutants in the future, from one or more point sources into the waters of the United States in violation of their NPDES permit and the CWA.

39. Defendants' NPDES General Permit requires defendants to comply with the terms and conditions of defendants' permit and to implement the management practices established in the Idaho State Waste Management Guidelines for Animal Feeding Operations. Such terms are incorporated by reference into the NPDES general permit.

40. Defendants are subject to national performance standards for feedlots under the CWA, 33 U.S.C. § 1316.

Page 9 -- COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## ALLEGATIONS

### COUNT 1

### Discharge of Pollutants Without NPDES Permit

41. Plaintiff hereby incorporates by reference all preceding paragraphs.

42. Section 301(a) of the CWA, 33 U.S.C. §1311(a), prohibits the discharge of pollutants from a point source into navigable waters of the United States, unless pursuant to the terms of a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. §1342.

43. Until November 8, 1999, defendants discharged pollutants from one or more point sources at the Grand View Dairies into waters of the United States without obtaining a NPDES permit.

44. On or about December 30, 1996, defendants allowed waste water to run off of a cow yard to an area near and above the spring area of Spring Cove Ranch.

45. On or about July 31, 1998, defendants allowed waste water to flow into the "old pond" area on west boundary of defendants' property, near and above the Butler spring. The pond discharges into basalt rock and/or fractured bedrock which is hydrologically connected to the Butler spring, also known as the Spring Cove Ranch spring.

46. On or about February 10, 1999, defendants allowed waste water to flow into the "old pond" area on the west boundary of defendants' property, near and above the Spring Cove Ranch spring.

47. On or about June 18, 19, and 20, 1999, defendants allowed waste water from the hospital barn to runoff and flow to the Walker spring.

48. On or about June 24, 1999, defendants allowed an overflow of dairy waste water from the pump station to an area west of the lagoon and pump station.

49. On or before September 18, 1999, and for months and possibly years prior, defendants dumped dead animals, dairy waste, and debris at the Walker Spring as it surfaces from the ground.

50. On or before September 20, 1999, defendants stacked manure on defendants' property boundary, above the Butler Spring.

51. On or before September 20, 1999, defendants allowed waste water to flow into the "old pond" area above the Butler spring.

52. On September 23, 1999, defendants allowed soil bedding waste to remain along the fence line near Walker Spring.

53. On or before October 17, 1999, defendants allowed runoff of waste from the hospital barn.

54. In discharging manure wastewater and pollutants without a permit into waters of the United States, defendants have violated section 301(a) of the CWA, 33 U.S.C. §1311(a). Such discharges, even if Grand View Dairies had obtained a general dairy NPDES permit, would have been in violation of the federal CWA.

## COUNT 2

### Discharge of Pollutants Not Authorized by NPDES Permit

55. Plaintiff hereby incorporates by reference all preceding paragraphs.

56. The CWA prohibits the discharge of pollutants from a point source into navigable waters of the United States, unless pursuant to the terms of a NPDES permit. 33 U.S.C. §§ 1311(a), 1342.

57. The CWA requires a NPDES permittee to comply with all conditions of its permit. 33 U.S.C. §§ 1311(a), 1365(f)(2), (f)(6); 40 C.F.R. 122.41.

58. On or about November 8, 1999, defendants were issued the NPDES general permit for CAFOs in Idaho, No. IDG-010077.

59. Defendants' NPDES permit prohibits the discharge of wastewater to waters of the United States, "except when precipitation events cause an overflow of process wastewater from a control facility properly designed, constructed, maintained, and operated to contain . . . [a]ll the contaminated runoff from a 25-year 24-hour rainfall event," plus additional runoff.

60. "The discharge of any materials or substance other than process wastewater is strictly prohibited by the permit."

61. Due to the above described and regularly occurring operational and maintenance deficiencies, along with the above described and regularly occurring discharges, and the improperly designed and constructed facilities, defendants are likely to continue discharging pollutants from the Grand View Dairy into waters of the United States.

62. In continuing to discharge pollutants, defendants will thereby continue to violate the CWA and their NPDES permit.

## COUNT 3

### Failure to Comply with National Performance Standards for Feedlots

63. Plaintiff hereby incorporates by reference all preceding paragraphs.

64. Defendants are subject to national performance standards for feedlots under the CWA, 33 U.S.C. § 1316; 40 C.F.R. Part 412.

65. Pursuant to the national performance standards for feedlots, defendants are prohibited from discharging process waste water pollutants into navigable waters. 40 C.F.R. § 412.13.

66. In discharging and continuing to discharge pollutants, defendants have violated the national performance standards for feedlots. 33 U.S.C. § 1316; 40 C.F.R. Part 412.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court grant plaintiff the following relief:

A. Issue a declaratory judgment that defendants have violated and continue to violate the CWA;

B. Enjoin defendants from operating their Dairy in such a manner as will result in further violation of the CWA and their NPDES permit. In particular, plaintiff seeks an order enjoining defendants from discharging or engaging in activities likely to discharge any manure waste water or other pollutants to waters of the United States except where such discharge is due to or a direct result of a "25-hour 24-hour rainfall event for that location." Also, plaintiff seeks an

Page 12 -- COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1 order enjoining defendants from operating and maintaining their Dairy in violation of the conditions of their permit and the Idaho State Waste Management Guidelines for Animal Feeding Operations;

C. Order defendants to pay civil penalties of up to $27,500 per day of violation for violations after January 30, 1997, and $25,000 per day of violation for violations on or before January 30, 1997, pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§1319(d) and 1365(a), including those identified in plaintiff's notice letters, violations identified during discovery, and violations committed subsequent to those identified in this complaint;

D. Authorize the plaintiff, for the period beginning on the date of the Court's order and running for five years after the defendants achieve compliance with the CWA, and their NPDES permit, to sample or arrange sampling of any discharge of pollutants from the Dairy including upstream and downstream sampling, groundwater monitoring that could impact surface water, and soil sampling that could determine agronomic rates of uptake, with the costs of the sampling to be borne by the defendants;

E. Order defendants to provide plaintiff, for a period beginning on the date of the Court's order and running for five years after defendants achieve compliance with the CWA and their permit with a copy of all reports and other documents which defendants submit to EPA, to the Regional Administrator of the EPA, or to the State of Idaho regarding defendants' discharges or NPDES permit at the time the document is submitted to these authorities;

F. Issue a remedial injunction ordering defendants to pay the cost of any environmental restoration or remediation deemed necessary and proper by the Court to comply with the Clean Water Act and ameliorate the water degradation caused by defendants' violations;

G. Award plaintiff its costs, including reasonable attorney and expert witness fees, as authorized by 33 U.S.C. §1365(d) and 28 U.S.C. §2412(d); and

H. Award such other relief as this Court deems appropriate.

1 | DATED : December __8__, 1999.

Respectfully submitted,

*/s/ Marc D. Fink*

Charles M. Tebbutt (OSB #96579)
Marc D. Fink (ISB #5367; OSB #99261)
Western Environmental Law Center
Counsel for Plaintiff

Laird Lucas
Local Counsel for Plaintiff

Page 14 -- COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF



# Western Environmental Law Center

*Defending the West*

**NORTHWEST OFFICE**
1216 Lincoln Street
Eugene, Oregon 97401
541/485-2471
541/485-2457 (fax)
westernlaw@igc.org
www.welc.org

Attorneys
Michael Axline*
John E. Bonine*
Marc Fink•
Peter M.K. Frost*
Carrie Stilwell*
Charles Tebbutt*†

**SOUTHWEST OFFICE**
P.O. Box 1507
Taos, New Mexico 87571
505/751-0351
505/751-1775 (fax)
law@welctaos.org

Attorneys
Matthew Bishop*
Grove Burnett‡
Benjamin Cross‡
David Gomez‡
Simeon Herskovits†
Lynn Sferrazza†

• admitted in Idaho
‡ admitted in New Mexico
† admitted in New York
* admitted in Oregon

October 7, 1999

CERTIFIED MAIL, RETURN RECEIPT REQUESTED <u>AND</u>
UNITED STATES FIRST-CLASS MAIL

Henry Bosma, Owner and Operator
Bosma Dairies, a/k/a Grandview Dairies, a/k/a Bliss Acres
and President, Bosma Enterprises, Inc.
4300 Beam Road
Zillah, WA 98953-9050

Jacob F. Bosma, Owner and Operator
Bosma Dairies, a/k/a Grandview Dairies, a/k/a Bliss Acres
318 East Spring Cove Road
Bliss, ID 83314

Dear Messrs. Bosma:

    This letter is to provide you with notice of intent of the Idaho Rural Council, Inc. (IRC), an Idaho not-for-profit corporation, to file a citizen suit against Bosma Dairies, a/k/a Grandview Dairies, a/k/a Bliss Acres and Bosma Enterprises, Inc., located at 318 East Spring Cove Road, Bliss, Idaho, pursuant to section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. 1365(a)(1)(A). You are hereby given notice that, upon the expiration of the sixty (60) day statutory waiting period, or sooner based upon violations of 33 U.S.C. 1316, IRC will file a civil action in federal district court. Because Mr. Henry Bosma has on numerous occasions refused to receive certain certified mail, this letter is also being sent by United States first-class mail.

    This lawsuit will allege that Henry Bosma, Jacob Bosma, Bosma Dairies, a/k/a Grandview Dairies, a/k/a Bliss Acres and/or Bosma Enterprises, Inc., located at dairy facilities on East Spring Cove Road near Bliss, Idaho, and collectively referred to hereafter as Bosma Dairies, have violated and continue to violate the CWA, and applicable state water pollution control laws, including but not limited to water quality standards. Bosma Dairies are Concentrated Animal Feeding Operations (CAFOs) as defined by 40 C.F.R. 122.23. CAFOs are considered point sources under the CWA. 33 U.S.C. 1362 (14). Bosma Dairies are subject to national

Exhibit A
Page 1

Messrs. Henry and Jacob Bosma
October 7, 1999
Page 2

performance standards under 33 U.S.C. 1316. Bosma Dairies have violated and continue to violate the CWA in the following manner.

Section 301 of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant from a point source into waters of the United States unless such discharge is permitted in a National Pollutant Discharge Elimination System (NPDES) permit.

Bosma Dairies have discharged, and continue to discharge, pollutants through a point source or point sources into waters of the United States including springs, wetlands, streams and irrigation and drainage canals, all of which eventually discharge to the Snake River. Bosma Dairies have discharged, and continue to discharge pollutants including, but not limited to, liquid and solid animal wastes, animal carcasses and animal fetuses. Such wastes contain, among other pollutants, fecal coliform and E. coli bacteria, other pathogenic substances, phosphorus, ammonia, nitrogen, nitrates and suspended solids and alter water quality indicator parameters such as biochemical oxygen demand and pH. Bosma Dairies have never obtained a NPDES permit for such discharges and even if Bosma has obtained a NPDES permit, discharges of the type that have occurred, and are likely to continue to occur, from the facility could not be, and have not been, permitted under federal law. Bosma Dairies continue to illegally discharge pollutants into the waters of the United States and the State of Idaho without a NPDES permit or in violation of such permit.

Illegal discharges have occurred on at least the following dates:

(1) 9/99, and months and perhaps years prior, carcasses and fetuses of calves, along with manure and other dairy wastes, were placed into the source of a spring on the north side of the Bosma Dairies along the Walkers' property line. From the state of decomposition of some of the carcasses, it appears that this material had been in place for a substantial period of time. The carcasses and wastes had been placed at the source of the spring and around the source of the spring such that decomposed matter, leachate, precipitation and/or contaminated stormwater had discharged and was likely to discharge to the spring.

(2) Present and prior operation and maintenance practices which have caused and are likely to continue to cause discharges from manure and other dairy facility waste into irrigation canals and the spring referred to in item (1) above and item (4) below.

(3) Discharges from the "hospital barn" to the canal and/or the spring described in item (1) during regular or intermittent times during 1998 and 1999 and perhaps as far back as 1994.

(4) Discharges from solids separator/transfer area and overapplication of waste on a continuous or intermittent basis from 1994 to the present to an unlined, non-engineered pond

Exhibit  A
Page  2

Messrs. Henry and Jacob Bosma
October 7, 1999
Page 3

located near the western border of the Bosma Dairies' property, adjacent to the Butlers' property. The pond discharges into basalt rock and/or fractured bedrock which is hydrologically connected to a spring to the west of Bosma Dairies. The spring is connected to Clover Creek, waters of the United States and Idaho.

(5)     As an industrial facility subject to effluent limitations for stormwater, Bosma Dairies is required to have an individual NPDES stormwater permit.

(6)     Each and every discharge from Bosma Dairies is required to be reported to the United States Environmental Protection Agency. In addition, Bosma is required to monitor water quality and report such findings to the agency. Bosma Dairies has failed to comply with these and other similar reporting requirements.

(7)     Bosma Dairies' facility is not designed and constructed to contain waste and stormwater in the event of a 25-year, 24-hour storm event.

(8)     Failure to comply with national performance standards for feedlots pursuant to 33 U.S.C. 1316.

(9)     Discharges which have caused violations of water quality standards for multiple pollutants and water quality indicators applicable in the State of Idaho.

(10)    Burial of animal carcasses near the unlined pond referred to in item (4) above such that pollutants from decomposition have contaminated the pond and/or groundwater which feeds the spring to the west of Bosma Dairies on Butlers' property.

    Notifier believes and alleges that a history of violations, similar in type and nature to the violations listed above, and if different, all related to improper construction, operation and maintenance of the Bosma Dairies, has continued from at least October 7, 1994, to the present. Such violations are known to the Dischargers and may be included in future legal actions by Notifier. Such discharges may only be known to Dischargers and eyewitnesses to be determined since such discharges were not reported by Dischargers as required by law.

    We intend, at the close of the sixty (60) day notice period, or sooner pursuant to violations of 33 U.S.C. 1316, to file a citizen suit under Section 505 of the CWA against Bosma Dairies for the statutory maximum of $27,500 per day for each violation stated above which occurred since January 31, 1997, and $25,000 per day for each violation stated above which occurred prior to January 31, 1997, in addition to those which have occurred of which you are aware and those occurring subsequent to this letter, plus injunctive and remedial relief, costs, attorney and expert witness fees, and such other relief as may be appropriate.

Exhibit  A
Page  3

Messrs. Henry and Jacob Bosma
October 7, 1999
Page 4

      The name, address and phone number of the person giving Notice of Intent to Sue under the Clean Water Act is:

      Idaho Rural Council
      P.O. Box 236
      Boise, Idaho, 83701
      Telephone Number: (208) 344-6184

      The names, address, and phone number of counsel for Notifier are:

      Charles M. Tebbutt
      Marc Fink
      Western Environmental Law Center
      1216 Lincoln Street
      Eugene, Oregon 97401
      Telephone Number: (541) 485-2471

      We will be available to discuss effective remedies and actions which will assure Bosma Dairies' future compliance with the CWA and all applicable state water pollution control laws. In addition, we welcome discussion about whatever facts you believe relevant which are not itemized in this notice letter. If you wish to avail yourself of this opportunity, or if you have any questions regarding this letter, please contact the undersigned.

                                        Sincerely,

                                        Charles M. Tebbutt

                                        Marc Fink
                                        Counsel for Idaho Rural Council

cc:     Carol Browner, Administrator, U.S. Environmental Protection Agency (certified mail)

       Charles Clarke, Regional Administrator, U.S. EPA, Region X (first class mail)

       Dirk Kempthorne, Governor, State of Idaho (certified mail)

       Jerry Neal, Preston, Gates & Ellis, counsel for Henry Bosma (courtesy copy by first class mail)

Exhibit A
Page 4